# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

McKinney Drilling Company and :
Zurich American Insurance :
Company, :
   Petitioners :
     :
  v. : No. 2105 C.D. 2014
    : Submitted: October 16, 2015
Workers' Compensation Appeal :
Board (Higinbotham), :
   Respondent :


BEFORE: HONORABLE DAN PELLEGRINI, President Judge
   HONORABLE PATRICIA A. McCULLOUGH, Judge
   HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI   FILED: November 5, 2015


  McKinney Drilling Company and its insurer, Zurich American Insurance Company (collectively, Employer), petition for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that granted the claim petition of Lee Higinbotham (Claimant) for benefits under the Pennsylvania Workers' Compensation Act (Act)[1] because he was a travelling employee who was injured while in the course and scope of his employment. We affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

Employer has its home office in Delmont, Pennsylvania. Claimant did not report to this office while employed as a drill rig equipment operator for Employer, but reported to various field locations. In February 2008, Claimant had finished his workday at a field site in Virginia and left to return home to Pennsylvania. While on his way home, he stopped to fix a flat tire and fell out of the bed of his truck sustaining injuries. In October 2010, Claimant filed a claim petition[2] seeking compensation benefits alleging that he had sustained neck and low back injuries, post-concussive syndrome, and depression as a result of the accident while in the course and scope of his employment with Employer.

At a hearing before the WCJ, Claimant testified that he did not work at Employer's home office in Delmont, but at different field locations in the Northeast region of the United States. He stated that he was assigned to these drilling projects by the General Superintendent and 95% of the projects required him to stay away from home. Claimant testified that he used his personal pickup truck whenever he went to the home office to take back broken parts or to pick up new parts before he headed out to a project. He stated that his truck had a mounted toolbox in the bed and he carried some personal tools like hand tools and wrenches that he was told to bring to the worksite to repair parts during machinery breakdowns. He testified that he paid for the tools, but that Employer would replace a broken tool or reimburse him for a replacement.

---

[2] In a claim petition proceeding, a claimant bears the burden of proving all of the elements necessary to support the award of compensation benefits, including establishing a causal relationship between the claimant's injury and his disability. *Inglis House v. Workmen's Compensation Board (Reedy)*, 634 A.2d 592, 595 (Pa. Cmwlth. 1993).

Claimant stated that at the time of his injury, he was assigned to work down in Virginia on a power line project. Claimant testified that he stayed overnight in a hotel from Sunday night to Friday night for the entire week and that Employer paid directly for the hotel. He testified that he also received a per diem for his meals and while he used his truck, he was reimbursed for the gas. He stated that he rode to the site one time with his superintendent, but that he drove his truck all of the other times.

Claimant stated that on the day of his injuries, he had finished work at the project and returned home to Pennsylvania when the tire on his truck blew out while he was on a bridge near Uniontown. He testified that he pulled off at the end of the bridge to fix the tire and that when he "turned to get out of the bed" after returning his tools to the truck, "[his] feet went out from under [him], and [he] went over the side" of the truck. (Reproduced Record (RR) 18). He stated that there was snow on the ground and in the bed of his truck at that time. He testified that he "remember[ed] somebody helping [him] get up off the ground. And they asked [him] if [he] was okay. And then, they helped [him] get into the truck, and [he] left." (*Id.* 19). He stated that he then drove to Uniontown Hospital due to a headache and low back pain and that a week later his neck started hurting and his headaches continued.

Claimant testified that the following Monday, he contacted William Hill (Hill), the superintendent of the job, and Tom McElhaney (McElhaney), Employer's Northeast regional superintendent, to notify them of his injuries. He stated that he was scheduled to go back to Virginia the following week, but that he

3

has not been able to go back to work because he is not able to climb up onto the drill rig or sit on the rig and he continues to have leg pain, back pain and headaches. (RR 74-75). Claimant testified that the Virginia project had already started before he got there and that he did not know how long the project would last because "[i]t would have been until it was done or until they shipped me somewhere else." (*Id.* 63).

Beverly Fisher, Claimant's girlfriend, testified that he called her and told her that he fell off of his truck after it had happened. She stated that when he got home, he told her that he had pain in his head, neck, shoulders and back and she took him to the hospital.

Roger Sapp testified that he was driving by the pull-off at the end of the bridge when he saw a parked truck with its lights on and Claimant lying on the ground near the truck. He stated that he stopped and helped Claimant up and that Claimant told him that he had fallen over the side of the truck and just wanted to go home.

McElhaney testified that the project in Virginia involved installing poles for an electric line, that it had several phases, and that "[i]t was scheduled for probably about 35 to 40 working days." (RR 145). He stated that Claimant started work on the project a couple of weeks prior to his February 2008 injuries, and while Employer didn't normally change work assignments during a project "too often," it was "a possibility" that Claimant could work at other job sites during the project in Virginia. (*Id.* 151). But, otherwise, Claimant would have continued to

work on the project until it was completed in April 2008. (*Id.* 151-152). He testified that most of the projects that Claimant worked on were on the road and required overnight stays. He confirmed that Employer provided lodging for workers at the Virginia project, and that Claimant was also given a per diem and reimbursement for fuel costs driving to and from the job site. He stated that Claimant drove his own truck to the Virginia worksite and that he drove from home and reported to the hotel. He testified that there might have been times that Claimant was required to take his own tools to a worksite, but "[i]f there was a superintendent on the job, they would not need their tools" and that there was a superintendent at this job location. (*Id.* 147). McElhaney stated that he first learned of Claimant's injuries from Hill, and that Claimant called him over the weekend and told him that he did not think that he would be back to work. He testified that he heard from Claimant a few weeks later to sign some insurance paperwork.

Hill testified that the project was supposed to last 3-1/2 to 4 months, but that there was no fixed date for it to end. He stated that Employer provided lodging for its employees in Virginia about 10 to 15 miles away from the worksite, and that he drove Claimant to the worksite every day in the company truck. He testified that Claimant rode down to Virginia with him one or two times, but that Claimant drove his own truck down most of the time. He confirmed that Claimant was not working at any other worksites while working in Virginia, and that he had his own set of tools in his truck and that he may have, on occasion, used some of those tools at the worksite. He stated that Claimant called him when he got the flat tire, but told him that he would take care of it. He testified that Claimant called

him the next day or two after to tell him that he had fallen out of his truck and hurt his back.

Claimant presented documents from the Uniontown Hospital Emergency Department indicating that he sought medical treatment for mid and low back pain a couple of hours after his fall. His treating chiropractor, Dr. Kevin Lotman, testified that Claimant sought treatment for pain involving his neck, upper/lower back, hip and leg. Based on Claimant's history and his examination, Dr. Lotman diagnosed Claimant as having lumbar and thoracic subluxations related to his fall and that he sustained a reverse whiplash-type injury to his neck from falling on his back. Dr. William Mitchell (Dr. Mitchell), a board-certified orthopedic surgeon, testified that he examined Claimant in 2010 at the request of an insurance company and found that Claimant had post-traumatic cervical and low back conditions that were causally related to his fall. Dr. Mitchell stated that Claimant has been treating with him since that time and he opined that Claimant is totally disabled from performing his pre-injury job.[3]

In May 2012, the WCJ issued a decision granting Claimant's claim petition, finding that Claimant's injuries sustained from his fall are compensable under the Act. The WCJ recognized that the injuries were sustained when Claimant was on his way home, and that injuries while commuting to and from work are not generally within the course and scope of employment. However, the

---

[3] The WCJ rejected as not credible the testimony of full recovery offered by Dr. Thomas Kramer, a board-certified orthopedic surgeon.

WCJ determined that an exception to the "coming and going rule[4]" applied because the nature of Claimant's job "required him to perform the duties as a heavy equipment operator 'in the field' at 'different locations'" so that "[C]laimant did not have a fixed location that he worked at for [Employer]. Rather, he would work at the job site he was assigned by his superintendent and the various job sites he works for [E]mployer, throughout his years of employment … were located throughout the Northeast region of the United States." (WCJ 5/31/12 Decision at 17).

The WCJ acknowledged Employer's argument that Claimant had a "fixed place of employment" at the time that he sustained his injuries "because he had been [at] work at the Virginia job site for an extended period of time and he was working there on an exclusive basis." (WCJ 5/31/12 Decision at 17). Nevertheless, the WCJ found:

---

[4] In a claim petition, the burden is on the claimant to prove that he was injured during the course and scope of employment. *Olszewski v. Workmen's Compensation Appeal Board (Royal Chevrolet and American Fire and Casualty)*, 648 A.2d 1255, 1257 (Pa. Cmwlth. 1994). "Whether an employee is acting within the course and scope of his or her employment at the time of injury is a question of law to be determined on the basis of the [WCJ's] findings of fact and is reviewable by this Court." *Id.* Generally, an employee's injury does not occur in the course and scope of employment if the employee is injured while travelling to or from the employer's premises. *Biddle v. Workmen's Compensation Appeal Board (Thomas Mekis & Sons, Inc.)*, 652 A.2d 807, 809 (Pa. 1995). This is often referred to as the "coming and going rule." *Id.* at 808. However there are four exceptions to this rule: "1) claimant's employment contract includes transportation to and from work; 2) claimant has no fixed place of work; 3) claimant is on a special mission for employer; or 4) special circumstances are such that claimant was furthering the business of the employer." *Setley v. Workmen's Compensation Appeal Board (Kawecki Berylco Industries)*, 451 A.2d 10, 11 (Pa. Cmwlth. 1982).

[E]ven though [C]laimant had been working at the job site for a few weeks prior to the incident of February 29, 2008, that job site was just one of many field sites [C]laimant had worked at as a heavy equipment operator for [Employer] throughout the time he held a job. Furthermore, during his testimony, Mr. McElhaney credibly confirmed that the Virginia job was completed on or around April 20, 2008. As such, even if [C]laimant had remained on that job up until the completion of the job, [C]laimant would have only had been working at that particular Virginia job site for a little over two months. I do not consider such a job assignment to be an "extended" job assignment, when considered in the context of [C]laimant's entire career as a heavy equipment operator for [Employer]. Furthermore, even though [C]laimant had been steadily working at the Virginia job site for a few weeks prior to the incident of February 29, 2008, Mr. McElhaney acknowledged during his testimony that it was possible that [C]laimant could have been reassigned to another job before the Virginia job was completed. Accordingly, I am not convinced that [C]laimant's work for [E]mployer was exclusively limited to the Virginia job site for any kind of extended period of time.

(*Id.* at 17-18).

Based on the foregoing, the WCJ concluded that Claimant had sustained his burden of proving that he sustained injuries, including back and neck injuries, when he fell off of the side of his truck and landed on the ground; that he had successfully established that he was in the course and scope of his employment with Employer at the time that he fell off of the truck; that he provided Employer with proper and timely notice of his accident and injuries; and that he successfully established that he has been totally disabled from his work injuries from March 1, 2008, onwards. (WCJ 5/31/12 Decision at 23).

8

Employer appealed to the Board claiming, *inter alia*, that the WCJ erred in determining that Claimant's injuries were sustained in the course and scope of his employment. Citing *Foster v. Workmen's Compensation Appeal Board (Ritter Brothers, Inc.)*, 639 A.2d 935 (Pa. Cmwlth.), *appeal denied*, 652 A.2d 1327 (Pa. 1994),[5] Employer argued that Claimant was working at the fixed location in Virginia based on Hill's testimony that there was no fixed date for the project to end so the "coming and going rule" applied and his injuries were not sustained while in the course and scope of his employment while travelling home from the worksite.

However, the Board affirmed the WCJ's decision distinguishing *Foster* and relying on *Sheckler Contracting v. Workmen's Compensation Appeal Board (Yonek)*, 697 A.2d 1062 (Pa. Cmwlth. 1997) and *Roman v. Workmen's*

---

[5] As the Board summarized:

> The claimant in Foster was employed as a carpenter for the employer. The claimant testified that he reported directly to various job sites as assigned by the employer. At the time of his injury, however, he was assigned to work at a mall for an indefinite period of time. He was injured while leaving the mall parking lot, after completing his work for that day. The Court held that the claimant's testimony that he was to report to the same job site every day for an *indefinite period* indicated that he had a fixed place of employment. [Emphasis added]. Thus, the claimant was not in the course and scope of his employment when he was injured while commuting from the job site to his home. Indeed, permanency of the work location appears to be the key component in determining whether an employee has a fixed place of employment.

(Board 10/28/14 Opinion at 5-6) (citation omitted).

9

*Compensation Appeal Board (Department of Environmental Resources)*, 616 A.2d 128 (Pa. Cmwlth. 1992):

> [W]e believe the facts, as established by Claimant's credible testimony, are more in line with the Commonwealth Court's decisions in <u>Roman</u> and <u>Sheckler</u> than <u>Foster</u>. In reaching this determination, we note several similarities between the facts of this matter and those of <u>Roman</u> and <u>Sheckler</u>, which seem to place Claimant squarely in the shoes of a travelling employee. For example, in <u>Roman</u> and <u>Sheckler</u>, as in this case, the claimants resided in hotels during the workweek, which were paid for by the employer, and they returned home to their residences on the weekends. In <u>Roman</u>, in particular, there appeared to be no question that under those circumstances, the claimant was a travelling employee. In addition, in <u>Sheckler</u>, the claimant was actually travelling home at the time of his injury, but was nonetheless found to have been in the course and scope of his employment when he was injured. In that case, the Court found it significant that the claimant could have been asked to report to different worksites after he returned home. Likewise, here, the WCJ noted Mr. McElhaney's acknowledgement that Claimant could have been asked to work at other sites while the Virginia project was going on.

(Board 10/28/14 Opinion at 8-9) (footnote omitted).

In this appeal,[6, 7] Employer argues that the WCJ erred in determining that Claimant was a travelling employee who was injured while in the course and

---

[6] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal*
**(Footnote continued on next page…)**

scope of his employment. Specifically, Employer argues that Claimant had a fixed place of employment at the Virginia worksite because the project was to be completed over an indefinite period of time, and he only worked at that site during the project so his injuries are not compensable under the "coming and going rule."

However, contrary to Employer's assertions, we do not believe that the WCJ erred in granting the claim petition because Claimant was a travelling employee of Employer under the Act. In *Sheckler*, a contractor had a temporary assignment at an Air Force base and the employer paid for and arranged his lodging near the base during the week, and provided transportation between the base and the private residence of the job foreman where they left their personal vehicles. *Sheckler*, 697 A.2d at 1063. The employer also paid for the gasoline

---

**(continued…)**

*Board (Wolfe)*, 652 A.2d 797, 799 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion…. In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

[7] Following argument, we denied Employer's application for supersedeas by Memorandum and Order dated February 6, 2015, explaining:

> Contrary to Employer's assertions, we do not believe that Employer has made a strong showing that it will likely prevail on the merits. Based on our review of this action and, in particular, the facts set forth above, it can reasonably be argued that substantial evidence supports the determination that Claimant was a travelling employee and was injured during the course and scope of his employment.

11

used by the vehicles travelling to and from the worksite. *Id.* In *Roman*, the employee worked as an inspector of various construction sites using an employer-provided car, and the employer paid for him to stay in a hotel near those sites during the week, returning home on the weekends. *Roman*, 616 A.2d at 129-30. The claimants in *Sheckler* and *Roman* were deemed to be travelling employees because their work took them to temporary placements; the employer paid for the travel to and from the job sites and for lodging near the job sites; and there was no indication that the claimants were required to report to their employers' main locations before proceeding to their assignments. *See Sheckler*, 697 A.2d at 1063; *Roman*, 616 A.2d at 129-30.

Likewise, in this case, substantial evidence supports the WCJ's determination that Claimant was a travelling employee. The evidence demonstrates that Claimant's employment took him to temporary placements throughout the Northeast region; that the Virginia project was not indefinite because it was scheduled to last for 35 to 40 working days; that Claimant could have been assigned to another project before the Virginia project was completed; that Employer reimbursed Claimant for the gasoline used to travel to and from the worksites; that Employer paid for Claimant's lodging near the worksites; and that Claimant was not required to report to Employer's office in Delmont before proceeding to the worksites. As a result, the WCJ did not err in granting Claimant's claim petition and Employer's claims to the contrary are without merit. *Sheckler*; *Roman*.[8]

---

[8] The cases that Employer cites are inapposite. *See Beaver and Casey, Inc. v. Workmen's Compensation Appeal Board (Soliday)*, 661 A.2d 40, 43 (Pa. Cmwlth. 1995) (the claimant was a **(Footnote continued on next page…)**

12

Accordingly, the Board's order is affirmed.


_____
DAN PELLEGRINI, President Judge


---

**(continued…)**

construction laborer on a pipe crew who traveled unreimbursed directly from his home to the worksite for an indefinite period until the employer's sanitary pipe contract was completed); *Foster*, 639 A.2d at 571-72 (the claimant was a journeyman carpenter who traveled unreimbursed directly from his home to the worksite for an indefinite period until the employer's contract was completed and he would not report to any other worksites during that period); *Biagini v. Workmen's Compensation Appeal Board (Merit Contracting Company)*, 632 A.2d 956, 959-60 (Pa. Cmwlth. 1993), *appeal denied*, 644 A.2d 1203 (Pa. 1994) (the claimant was a construction foreman who traveled unreimbursed directly from his home to the worksite and was allowed, but not required, to use his own truck to haul materials at the worksite for which he could use the company gasoline credit card and he worked at the same site for four months). *See also Sheckler*, 697 A.2d at 1063 ("In *Foster*, the claimant was required to report directly to a site every day for an indefinite period of time. Because 'it was not envisioned that claimant would report to any other sites…,' [*id.*], 639 A.2d at 938, we held the claimant ineligible for benefits when he was injured travelling from his place of employment.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

McKinney Drilling Company and    :
Zurich American Insurance       :
Company,                            :
            Petitioners       :
                             :
          v.              : No. 2105 C.D. 2014
                             :
Workers' Compensation Appeal  :
Board (Higinbotham),        :
            Respondent   :

# **O R D E R**

AND NOW, this 5th day of <u>November</u>, 2015, the order of the Workers' Compensation Appeal Board dated October 28, 2014, at No. A12-0859, is affirmed.

_____
DAN PELLEGRINI, President Judge